UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **JEREMIAH BLANK,** § § | |
| Plaintiff, § | CIVIL ACTION NO. _____ |
| § | |
| v. § | |
| § | |
| **BECKETT COLLECTIBLES, LLC,** § | JURY TRIAL DEMAND |
| § | |
| Defendant. § | |
| § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Jeremiah Blank ("**Blank**") files this Original Complaint against Defendant Beckett Collectibles, LLC ("**Beckett**") and respectfully shows the Court the following:

### I. INTRODUCTION

**Stan Lee** was the famous creator of many Marvel comic book legends and characters like Spider-Man. Up until his death in 2018, by his side at every Comic-con and public signing event with his adoring fans was his mentee, cohort, friend, and business partner - Plaintiff Jeremiah Blank. Jeremiah Blank is a resident of San Diego, California, and former Vice President of Business Development for the late great Stan Lee. Going back over decades through today, Jeremiah Blank is the owner of a highly valuable collection of rare trading cards directly sourced from Stan Lee's personal archive. These cards include unreleased test prints, autographed items, and iconic comic book covers, many of which bear personal inscriptions and signatures from the great Stan Lee himself, rendering them irreplaceable both monetarily and sentimentally. After Stan Lee's death, Jeremiah Blank sought to entrust this valuable legacy of cards to Beckett Collectibles LLC in Dallas, Texas; and that's where this epic story of theft or loss begins.

1



This case arises out of Beckett's theft or at least brazen and negligent scheme of mishandling irreplaceable collectibles resulting in their loss, violations of the Texas Deceptive Trade Practices Act, breaches of contract, and conversion orchestrated by Defendant and the entities under its control. Defendant Beckett carelessly lost eighty-seven highly valuable and unique collectible cards from Stan Lee's personal collection, failed to safeguard them despite explicit representations of expertise in handling such items, and breached its obligations under the submission agreements by returning only a fraction of the entrusted property while offering insultingly inadequate compensation. Through this misconduct, Defendant Beckett unjustly enriched itself through retained service fees, caused substantial financial and sentimental harm to

Plaintiff Jeremiah Blank, and undermined Plaintiff's trust in professional grading services, personal connections to Stan Lee's legacy, and potential market opportunities. Plaintiff now seeks to hold Beckett accountable for its actions and recover damages for the harm caused.

## II. PARTIES

1.  Plaintiff Jeremiah Blank is an individual residing in San Diego County, California. Plaintiff is a collector and owner of rare and valuable collectible cards, including items from the personal archive of the late Stan Lee, with whom Plaintiff had a professional relationship as Stan Lee's Vice President of Business Development. Plaintiff brings this action to recover damages resulting from Defendant's negligent loss of his irreplaceable property.

2.  Defendant Beckett Collectibles, LLC is a limited liability company organized under the laws of the State of North Carolina, with its principal place of business in Plano, Texas. Defendant operates as a professional grading, authentication, and encapsulation service provider for collectibles, including rare trading cards, and maintains facilities in Dallas, Texas, where the events giving rise to this action occurred. Defendant is responsible for the negligent loss of Plaintiff's irreplaceable property as detailed herein.

## III. JURISDICTION AND VENUE

3.  This Court also has jurisdiction under 28 U.S.C. § 1332(a), as there is complete diversity of citizenship between Plaintiff Blank and Defendant, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.  Venue is proper in the Northern District of Texas, Dallas Division, pursuant to 28 U.S.C. § 1391(b), because: (i.) The Submission Agreements between Plaintiff and Defendant expressly designate Dallas County, Texas, as the venue for resolving disputes arising under the Agreements; (ii.) A substantial part of the events or omissions giving rise to the claims occurred

in this District, including Defendant's receipt of the collectible cards at its Dallas facility, negligent loss of the property, and failure to fulfill obligations under the grading and encapsulation services; and (iii.) Defendant conducts significant business operations in this District, including grading, authentication, and encapsulation services directly related to the claims in this action.

5. This Court has personal jurisdiction over Defendant because it is organized under the laws of North Carolina but maintains its principal place of business in Texas and conducts substantial business in Texas, including within the Northern District of Texas. Defendant operates facilities in Dallas, Texas, where the misconduct alleged herein occurred. By entering into agreements with Plaintiff, accepting hand-delivered property for services in this District, and breaching obligations related to that property, Defendant purposefully availed itself of the jurisdiction of this Court.

## IV. FACTUAL BACKGROUND

### A. <u>Beckett Induces Customers to Trust It With Valuable and Rare Collectibles</u>

6. Defendant Beckett claims to be a prominent provider of professional grading, authentication, and encapsulation services for collectible trading cards, including sports, non-sports, and gaming cards. Beckett holds itself out as the most accurate and trusted grading in the collectibles industry and deceptively boasts that it is The GOLD STANDARD of grading services, emphasizing its expertise and reliability to attract collectors with valuable and delicate items.

7. In its promotional and marketing materials, Beckett highlights the secure and careful handling of collectibles, describing its encapsulation process as featuring a Safe and secure case ultrasonically welded to be tamper-proof and water-resistant, along with a Sealed, archival inner sleeve to protect card from internal movement, yet will not detract from card clarity, and a crystal clear outer shell, prevents damage while providing a beautiful frame for your collectible.

4

These representations assure customers that Beckett can be trusted to safeguard expensive and irreplaceable objects.

8. Beckett further deceptively builds customer trust by touting its long-standing reputation, stating that it has over 30 years of serving as the most trusted resource for collectors and commits to maintain the trust and excellence the company was built upon. Such promotions underscore Beckett's purported dedication to protecting valuable collectibles through meticulous processes and transparency.

9. The grading process at Beckett begins with receiving and logging submissions into their system, followed by verification, detailed examination, and encapsulation. Cards are counted against the submission form upon arrival, then moved to verification where experts identify them properly and assign unique identifiers. Graders assess authenticity and condition using a 1-10 scale across four subgrades: centering, corners, edges, and surface. For example, the grader will take a card from the bin, carefully remove it from its holder, and begin examination. After grading, cards proceed to labeling and encapsulation, where they are sealed in holders.

10. Beckett emphasizes protection through secure encapsulation and handling methods designed to safeguard items from damage. The Beckett case is ultrasonically welded to be tamper-proof and water-resistant, with a sealed, archival inner sleeve to protect card from internal movement, yet will not detract from card clarity, and a crystal clear outer shell prevents damage while providing a beautiful frame for your collectible. Additionally, graded cards are placed in custom inner sleeves and bags to protect against scratching, and holders allow all edges to be viewed while being stackable for safe storage. For other collectibles like autographed items, tamper-evident certification stickers and custom sleeves are used, with options for encapsulation in patented holders.

11.  Beckett uses a systematic tracking approach to ensure collectibles are monitored throughout the process and not lost. Upon receipt, each package is opened and logged into our system. The cards are counted against the submission form. A unique sticker is then produced for each card, containing a unique submission number, a unique serial number for that card, a barcode, the due date and a place for graders to assign grades. This allows for precise tracking. Bins are locked in secure transport cabinets and stored in a vault between steps, with the facility's security so stringent that tours are not permitted due to security. Customers receive email updates at key stages, including invoicing, completion, and shipping with tracking information. Certification numbers enable verification via their website or app, and items must have declared values for insurance, with Beckett reserving the right to adjust understated values to ensure coverage. Overall, these measures aim to maintain anonymity during grading by removing personal info and ensure items are graded and encapsulated safely and securely.

12.  Beckett further assures customers of meticulous tracking and protection by providing real-time email updates throughout the grading process, including notifications upon delivery to Beckett, invoicing, verification once all cards have been verified, grading completion, and shipping with tracking information.

B.  **Beckett Failed to Fulfill These Promises**

15.  Plaintiff Jeremiah Blank, a resident of San Diego, California, and former Vice President of Business Development for the late Stan Lee, is the owner of a highly valuable collection of rare trading cards directly sourced from Stan Lee's personal archive. These cards include unreleased test prints, autographed items, and iconic comic book covers, many of which bear personal inscriptions from Stan Lee himself, rendering them irreplaceable both monetarily and sentimentally. One of these cards, signed by Stan Lee himself, is irreplaceable.

16. Recognizing the exceptional value and fragility of these collectibles, Plaintiff sought professional grading and encapsulation services from Defendant Beckett, relying on Beckett's representations of expertise, security, and meticulous care in handling such items.

17. To ensure the utmost safety and avoid any risks associated with shipping, Plaintiff personally hand-delivered the collectibles to Beckett's facility in Dallas, Texas. On multiple occasions, Plaintiff flew from San Diego to Dallas to submit a total of 103 cards for grading and subsequent pedigree encapsulation, which would authenticate their provenance from Stan Lee's collection. The first submission occurred on or about September 15, 2021, as evidenced by the signed Submission Form (attached hereto as Exhibit B), where Plaintiff declared the items and agreed to Beckett's terms for processing. Beckett confirmed receipt.

18. Following the initial grading, Plaintiff returned to Dallas for a re-submission of the cards to apply the pedigree designation. This second hand-delivery took place shortly thereafter, with the signed Submission Form detailing the items for pedigree designation. Throughout these interactions, Beckett's staff assured Plaintiff of the secure handling and tracking of his items, consistent with their promotional promises of tamper-proof processes and vault-secured storage.

19. Over the ensuing months, despite Plaintiff's diligent follow-up inquiries, Beckett failed to return the majority of the collection. Ultimately, Beckett returned only 16 of the 103 cards submitted, admitting that the remaining 87 cards—valued at approximately $250,000 or more based on fair market estimates—had been "lost" or otherwise misplaced under their custody. A detailed inventory of the lost items, including descriptions, quantities, and estimated values, along with pictures of just a sampling of the extremely valuable cards is attached hereto as Exhibit A - D. Beckett's inability to account for these irreplaceable items, despite their touted tracking systems

and security measures, suggests either gross negligence in their processes or potentially willful misconduct amounting to conversion or theft.

20. In response to the loss, Beckett offered Plaintiff an insulting meager $20,000 in compensation, an amount that grossly undervalues the cards' rarity, provenance, and market demand, as attested by industry experts and comparable sales. This inadequate offer, coupled with Beckett's refusal to provide a full explanation or adequate remediation, has caused Plaintiff substantial financial harm, emotional distress, and loss of unique personal memorabilia tied to his professional history with Stan Lee.

21. As a direct result of Beckett's actions, Plaintiff has suffered not only financial damages exceeding $250,000 in estimated value in today's market, but also significant emotional distress due to the loss of items with deep personal ties to Stan Lee, whom Plaintiff served professionally. Furthermore, the pedigree encapsulation that was never completed has deprived Plaintiff of enhanced market value and auction premiums associated with authenticated provenance from Stan Lee's collection.

**C.     Beckett Breached Its Own Terms and Failed to Deliver the Promised Services**

22. On or around September 15, 2021, Plaintiff Jeremiah Blank entered into a Submission Agreement with Defendant Beckett Grading Services for the grading and encapsulation of 90 rare collectible cards from Stan Lee's personal archive. A true and correct copy of the Submission Form and Agreement is attached hereto as Exhibit B. Under this agreement, Beckett agreed to provide professional grading services, including authentication, condition assessment, and secure handling, in exchange for service fees paid by Plaintiff.

23. The agreement required Beckett to: i. Receive, log, and track the submitted cards using unique identifiers and secure processes, as promoted on Beckett's website and in its rules;

ii. Grade the cards accurately and encapsulate them in tamper-proof holders to protect against damage or loss; and iii. Return all cards to Plaintiff in their graded and encapsulated form, or provide full compensation at fair market value in the event of any loss, based on declared values and insurance provisions.

24. Shortly thereafter, on or around May 26, 2022, a second Submission Agreement was entered regarding 103 cards, reaffirming the terms of the initial agreement. A true and correct copy of the subsequent Submission Form and Agreement and pictures of the cards being left under Beckett's care is attached hereto as Exhibit C. This included a reaffirmation of Beckett's obligations to: i. Safeguard the cards through vault storage, real-time tracking, and email updates on progress; ii. Apply pedigree designations to authenticate provenance from Stan Lee's collection, enhancing their value; and iii. Ensure the safe return of all items, with insurance coverage adjusted as needed to reflect true value.

25. Plaintiff fully performed his obligations under both Submission Agreements, personally hand-delivering the 103 cards to Beckett's Dallas facility on multiple trips from San Diego, paying all required service fees.

26. Through his efforts, Plaintiff entrusted Beckett with irreplaceable items of significant monetary and sentimental value, relying on Beckett's representations of expertise and security. These contributions directly benefited Beckett, which collected fees for services while promoting itself as the gold standard for handling such collectibles.

27. Despite Plaintiff's full performance, Beckett failed to comply with the Submission Agreements by failing to return 87 of the 103 cards and admitting the loss in correspondence with Plaintiff, including communications with Scott May. Beckett dismissed its obligations by offering

only $20,000 in compensation, far below the estimated fair market value of $250,000 in today's market, and as of the date Mas detailed in Exhibit A.

28. Beckett further refused to provide a full accounting of the loss, despite Plaintiff's repeated demands, and denied any further liability beyond the inadequate offer, contradicting its own terms requiring compensation at fair market value. Beckett's statements and actions were part of a broader pattern of negligence and bad faith conduct aimed at evading its contractual and bailment obligations, including failures in its touted tracking and security systems.

29. Beckett's repudiation of the Submission Agreements caused significant harm to Plaintiff, including: (i.) The loss of 87 irreplaceable cards valued at approximately $175,750, as inventoried in Exhibit A, and worth $250,000, in today's market; (ii.) The denial of pedigree encapsulation, which would have added a 20% premium to auction or resale value.; (iii.) Emotional distress and reputational harm arising from the loss of items with personal ties to Stan Lee's legacy; and (iv.) Additional costs for travel, follow-up, and legal efforts to recover the value.

30. Beckett's repudiation was not an isolated incident but part of a deliberate failure to uphold its duties, enriching itself at Plaintiff's expense through retained fees and avoided liability. Beckett's actions demonstrate bad faith, negligence, and disregard for its obligations, further justifying the claims for damages, rescission, and other relief sought by Plaintiff.

31. This lawsuit seeks to hold Beckett accountable for its actions and secure the relief necessary to compensate Mr. Blank for the harm he has suffered.

## V.  CAUSES OF ACTION

### COUNT 1
### Breach of Contract

32. Plaintiff re-alleges each and every allegation set forth above and incorporates them herein.

33. To establish a breach of contract claim under Texas law, the Plaintiff must prove (1) the existence of a valid contract; (2) Plaintiff's performance or tendered performance; (3) Defendant's breach of the contract; and (4) damages sustained as a result of the breach.

34. On or about May 26, 2022, Plaintiff Jeremiah Blank entered into a valid and enforceable Submission Agreement with Defendant Beckett Grading Services for the professional grading and encapsulation of 103 rare collectible cards from Stan Lee's personal archive. Under the terms of the Submission Agreement, Beckett agreed to, among other things: receive, log, and securely track the submitted items; provide accurate grading and tamper-proof encapsulation; safeguard the cards against loss or damage through meticulous processes; and return all items to Plaintiff in their graded form or provide full compensation at fair market value in the event of loss.

35. This agreement was supported by mutual consideration: Plaintiff provided the valuable collectibles for grading and paid the required service fees, while Beckett gained revenue from its expertise and services in the collectibles industry.

36. Plaintiff Jeremiah Blank fully performed his obligations under the Submission Agreement, including personally hand-delivering the 103 cards to Beckett's Dallas facility to ensure safe transport, and paying all invoiced fees.

37. Plaintiff acted in good faith throughout the process, fulfilling all conditions precedent, cooperating with Beckett's staff during submissions, and relying on Beckett's representations of secure handling and tracking.

38. Beckett materially breached the Submission Agreement in multiple ways. Despite its promises of meticulous tracking and vault-secured storage, Beckett lost or otherwise failed to account for 87 of the 103 submitted cards, which were irreplaceable items from Stan Lee's personal collection, violating the contractual duty to safeguard and return the property.

39. Beckett misrepresented its ability to handle valuable collectibles with absolute care, as promoted in its materials stating processes designed to get your cards graded and encapsulated safely and securely and back to you, yet it failed to prevent the loss through inadequate inventory controls or security lapses.

40. Beckett failed to complete the pedigree encapsulation for the lost cards, which was a central purpose of the re-submission agreement, depriving Plaintiff of enhanced provenance authentication and market value.

41. Beckett engaged in further breaches by offering only $20,000 in compensation, an amount that disregards the declared values, fair market estimates (approximately $175,750 as detailed in Exhibit A), and its own terms requiring compensation based on fair market value, effectively repudiating its obligation to make Plaintiff whole.

42. Beckett's breaches were willful and deliberate, as evidenced by its admission of fault through representatives like Scott May, yet refusal to provide a full explanation, adequate remediation, or compliance with the agreement's insurance and compensation provisions.

43. As a direct and proximate result of Beckett's breaches, Plaintiff Jeremiah Blank suffered substantial financial and emotional harm.

44. The Submission Agreement was essential for authenticating and enhancing the value of Plaintiff's unique collection, and Beckett's breaches undermined this critical endeavor. Beckett's actions—or lack thereof—were not only material breaches but were also compounded

by bad faith conduct, including the failure to uphold its touted security measures and misrepresentations made in its promotional materials.

## COUNT 2
### Violation of Texas DTPA

45. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

46. To establish a claim under the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code § 17.41 et seq., the Plaintiff must prove: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts or practices, including but not limited to misrepresentations of the quality or characteristics of services, unconscionable actions, or breach of an express or implied warranty; (3) the deceptive acts were a producing cause of the plaintiff's damages; and (4) the conduct was knowing or intentional to support enhanced damages.

47. Plaintiff Jeremiah Blank is a consumer under the DTPA, as he acquired grading and encapsulation services from Defendant Beckett Grading Services by purchase, specifically submitting 103 rare collectible cards for professional handling in exchange for fees, as evidenced by the Submission Agreements (Exhibits B and C).

48. Defendant Beckett engaged in false, misleading, or deceptive acts or practices by representing itself as the most accurate and trusted grading in the collectibles industry and the gold standard of grading services, assuring consumers that items would be handled with utmost care and expertise through secure tracking, vault storage, and tamper-proof processes designed to prevent loss or damage.

49. Beckett further misrepresented its services by promoting real-time email updates, unique serial number tracking, and insurance adjustments to ensure coverage, creating the impression that valuable collectibles would be safeguarded and returned safely, as stated in its

promotional materials and submission rules emphasizing meticulous processes and a commitment to being the most trusted resource for collectors.

50. These representations were false or misleading because, despite Plaintiff's hand-delivery and reliance on these assurances, Beckett lost 87 irreplaceable cards valued at approximately $250,000 or more in today market, Beckett failed to uphold its touted security measures, tracking systems, and duty to prevent such losses.

51. Beckett's actions were unconscionable under the DTPA, as they took advantage of Plaintiff's lack of knowledge or experience in grading processes, grossly exceeding fair business practices by offering only a meager $20,000 in compensation—an amount that is insultingly inadequate and disregards the cards' declared values, rarity, and provenance—while pocketing and retaining service fees and refusing a full accounting of the theft and/oe loss.

52. Beckett breached express and implied warranties under the DTPA, including the implied warranty of workmanlike performance in providing grading services, by failing to return the majority of the cards in graded form and instead losing them, contrary to its warranties of safe encapsulation and secure handling.

53. Beckett's deceptive acts were knowing or intentional, as evidenced by its awareness of the high value and irreplaceable nature of the cards (through declared values and personal delivery), yet systemic failures in tracking and storage allowed the loss, followed by an inadequate response that contradicted its own promotional commitments.

54. As a direct and proximate result of Beckett's deceptive acts, Plaintiff suffered actual damages, including the economic loss of the 87 cards (detailed in Exhibit A), additional costs for travel and follow-up, emotional distress from the sentimental loss tied to Stan Lee's legacy, and deprivation of enhanced market value from uncompleted pedigree encapsulation.

55. Beckett's violations of the DTPA were a producing cause of Plaintiff's harm, undermining his reliance on Beckett's expertise and representations, and entitling Plaintiff to economic damages, mental anguish damages, treble damages for knowing conduct, attorneys' fees, and costs under the Act.

## COUNT 3
## Conversion

114. Plaintiff re-alleges and incorporates by reference each and every allegation set forth above.

115. Under To establish a claim for conversion under Texas law, the Plaintiff must prove: (1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property, resulting in damages.

116. Plaintiff Jeremiah Blank owned and had legal possession of 103 rare and irreplaceable collectible cards from Stan Lee's personal archive, which he personally hand-delivered to Defendant Beckett Grading Services for temporary grading and encapsulation services under the Submission Agreements (Exhibits B and C), retaining all rights to their return upon completion.

117. Defendant Beckett unlawfully and without authorization assumed and exercised dominion and control over the cards by losing or otherwise permanently depriving Plaintiff of 87 of them, inconsistent with Plaintiff's ownership rights and Beckett's bailment obligations to safeguard and return the property, as evidenced by its failure to account for the items despite touted tracking systems and secure processes.

118. Beckett's dominion was wrongful, as the unexplained loss of the cards—despite representations of meticulous handling, unique serial numbering, vault storage, and real-time updates—amounts to a permanent deprivation, particularly given the irreplaceable nature of the items and Beckett's admission of fault without remediation.

119. Plaintiff demanded return of the property through repeated inquiries, correspondence with Beckett representatives like Scott May, and a formal demand letter May 12, 2025, which outlined the loss and requested full compensation or recovery equivalent to restoration. A copy of that letter is attached as Exhibit D.

120. Defendant Beckett refused to return the property or adequately compensate Plaintiff, instead offering only $20,000—an amount far below the fair market value of approximately $250,000 or more (as detailed in Exhibit A)—and failing to provide any explanation or efforts to locate the stolen or lost cards, thereby confirming its refusal.

121. Beckett's conversion was intentional or at least grossly negligent, as it knowingly accepted high-value items for custody, promoted unbreakable security measures, yet allowed their disappearance without rebutting the presumption of wrongful control in this bailment context.

122. As a direct and proximate result of Beckett's conversion, Plaintiff suffered damages, including the loss of the 87 cards' economic value, deprivation of sentimental and provenance-based worth tied to Stan Lee, additional expenses for travel and legal pursuit, and emotional distress from the irreplaceable harm.

123. Beckett's actions in converting the property were willful, justifying exemplary damages, and have unjustly enriched Beckett through retained service fees while depriving Plaintiff of his unique collection and potential market opportunities.

## VI. DAMAGES

124. Plaintiff Jeremiah Blank has suffered significant actual damages as a direct result of Defendant Beckett Grading Services' breaches of contract, deceptive trade practices, conversion, and negligent conduct. Loss of Value of Collectibles

125. Plaintiff has lost the fair market value of the 87 irreplaceable collectible cards from Stan Lee's personal archive, estimated at approximately $175,750, due to Beckett's failure to safeguard and return the items as promised under the Submission Agreements.

126. Plaintiff has been deprived of the enhanced value that would have resulted from the pedigree encapsulation, including a 20% premium for authenticated provenance, which Beckett failed to complete for the lost cards.

127. Plaintiff has incurred significant costs to mitigate the harm caused by Beckett's misconduct, including multiple flights and travel expenses from San Diego to Dallas for hand-delivery and follow-up inquiries, as well as expenses related to valuing the loss and pursuing recover.

128. Plaintiff's emotional well-being has been significantly damaged due to the loss of items with deep personal significance, stemming from his professional relationship with Stan Lee as Vice President of Business Development, resulting in irreplaceable sentimental loss. This harm extends to the destruction of unique memorabilia that held both historical and personal value, causing ongoing distress from Beckett's careless handling and inadequate response. Plaintiff has been deprived of the opportunity to sell or auction the graded and pedigreed cards, which could have generated substantial revenue in the collectibles market, given their rarity and connection to Stan Lee.

129. The negligent and deceptive conduct of Beckett was willful, intentional, or grossly negligent, warranting the award of exemplary damages to deter such behavior in the future, particularly given its representations as the gold standard yet failure to prevent the loss. Beckett's actions, including the unexplained disappearance of high-value items despite touted security measures and its refusal to provide adequate compensation, demonstrate egregious misconduct deserving of punitive damages. Restitution

130. Plaintiff is entitled to recover his attorneys' fees and costs incurred in pursuing this action under the Texas Deceptive Trade Practices Act, applicable law, and the terms of the Submission Agreements.

131. Plaintiff seeks pre-judgment and post-judgment interest on all damages awarded, as permitted by law, to fully compensate him for the harm suffered due to Beckett's actions.

Plaintiff Jeremiah Blank seeks judgment against Defendant for:

1. Actual and consequential damages, including the value of the lost cards, mitigation costs, and emotional distress.

2. Exemplary damages for gross negligence, deceptive practices, and conversion.

3. Restitution of retained fees and any other unjust enrichment.

4. Return or full compensation for the lost property..

5. Attorneys' fees and litigation costs.

6. Pre- and post-judgment interest on all damages awarded.

7. Any additional relief the Court deems just and proper.

Respectfully submitted this 15th day of August, 2025.

                                          **BUCHALTER, A PROFESSIONAL CORPORATION**

                                        By: */s/ Matthew E. Yarbrough*

**MATTHEW E. YARBROUGH**
State Bar No. 00789741
**JASON BLACKSTONE**
State Bar No. 24036227
100 Crescent Ct., 7th Floor
Dallas, Texas 75201
Telephone: (214) 263-7500
myarbrough@buchalter.com
jblackstone@buchalter.com

*ATTORNEYS FOR PLAINTIFF*

19